

# The Attorney General of Texas

May 9, 1984

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Juston, TX. 77002-3111
, 13/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Kenneth H. Ashworth
Commissioner of Higher Education
Coordinating Board
Texas College & University System
P. O. Box 12788, Capitol Station
Austin, Texas    78711

Opinion No. JM-156

Re: Whether a community college
district may create a labor
management committee to conduct
discussions concerning employ-
ment conditions in the district

Dear Mr. Ashworth:

You have asked whether article 5154c, V.T.C.S., prevents the
Alamo Community College District from creating a "labor management
committee" that will discuss general proposals concerning employment
conditions when (1) no official grievance has been filed by any
individual employee and (2) wages, hours of work, and other conditions
of work are established by the duly elected college district board of
trustees.

A letter from the chancellor of the Alamo Community College
District states that he

> received a request from the executive director of
> the American Federation of State, County, and
> Municipal Employees (AFSCME), San Antonio Area
> Public Employees Local 2399, requesting that we
> 'sit and discuss grievances' pertaining to such
> matters as a cost of living salary increase, a
> longevity pay plan, increased mileage, funeral
> leave, and night shift and 24-hour shift
> differential pay . . . . I did not, however,
> offer to meet with the union for purposes of
> discussing those matters . . . .
>
> The union replied by indicating that my letter
> did not address itself to the union's 'request to
> set a date, time and place for a meeting with our
> designated Grievance Committee of ACCD Employee
> Members . . . .'
>
> I responded to that AFSCME letter by indicating
> a willingness to attend any meeting to which I was

invited. I also stated that I would not recognize the union 'ACCD Grievance Committee' as an official group for purposes of discussions of wages, hours of work and working conditions within the district. I advised the union that I worked directly with staff councils which were composed of employees who were elected as representatives from all levels of our organization. I noted that some of the union's members were elected members of those councils. Finally, I advised the union that grievances which we would consider would be those filed by individual employees under our grievance procedures. I also recognized the right for such employees to choose union representation in pursuit of their grievances.

. . . .

I view the Texas statutes as requiring the college district to deal with unions in connection with grievances only when they have been selected as a representative of an employee who has filed a grievance on a matter of individual concern to him or her . . . . Thus, the union would be limited to representing an employee with respect to the particular item or items of concern to that employee as expressed in his/her grievance and would not be permitted to raise general issues pertaining to wages, hours of work and conditions of work within the college district concerning which no employee has filed a grievance.

. . . .

If the Alamo Community College District and other governmental units meet with and discuss so-called 'grievances' by the union in the manner and under the conditions set forth in the AFSCME proposal . . . where the union is not representing any particular employee or employees on any specific grieved matter, [this] could invite the very kind of collective bargaining with the union regarding general conditions of employment which is prohibited by the statute.

Article 5154c, V.T.C.S., provides in pertinent part as follows:

Section 1. It is declared to be against the public policy of the State of Texas for any

official or group of officials of the State, or of
a County, City, Municipality or other political
subdivision of the State, to enter into a
collective bargaining contract with a labor
organization respecting the wages, hours, or
conditions of employment of public employees, and
any such contracts entered into after the
effective date of this Act shall be null and void.

Sec. 2.  It is declared to be against the
public policy of the State of Texas for any such
official or group of officials to recognize a
labor organization as the bargaining agent for any
group of public employees.

. . . .

Sec. 5.  The term 'labor organization' means
any organization of any kind, or any agency or
employee, representation committee or plan, in
which employees participate and which exists for
the purpose, in whole or in part, of dealing with
one or more employers concerning grievances, labor
disputes, wages, rates of pay, hours of
employment, or conditions of work.

Sec. 6.  The provisions of this Act shall not
impair the existing right of public employees to
present grievances concerning their wages, hours
of work, or conditions of work individually or
through a representative that does not claim the
right to strike.

To answer your question, we must first construe sections 1 and 2 of
this article.

Section 1 prohibits officials of political subdivisions from
entering into "a collective bargaining contract with a labor
organization respecting the wages, hours, or conditions of employment
of public employees."  In our opinion, the term "collective
bargaining" necessarily contemplates a process in which officials of a
political subdivision and representatives of a labor organization
conduct negotiations with an eye towards reaching a binding,
enforceable, bilateral agreement between the subdivision and the
organization.  Case law supports this view.  In Consolidated Edison v.
National Labor Relations Board, 305 U.S. 197, 236 (1938), for example,
the United States Supreme Court described Congress's provision for
collective bargaining in the National Labor Relations Act of 1935 as
having the "manifest objective" of "the making of contracts" between

employers and labor organizations. Similarly, <u>National Labor Relations Board v. Sands Manufacturing Company</u>, 306 U.S. 332, 342 (1938) states that

> [t]he legislative history of the Act goes far to indicate that the purpose of the statute was to compel employers to bargain collectively with their employees <u>to the end that employment contracts binding on both parties</u> should be made. (Emphasis added).

Finally, in <u>Beverly v. City of Dallas</u>, 292 S.W.2d 172, 176 (Tex. Civ. App. - El Paso 1956, writ ref'd n.r.e.), the court stated that

> a contract or agreement resulting from collective bargaining must of necessity be a bilateral procedure culminating in a meeting of the minds involved and binding the parties to the agreement.

Section 2 prohibits the recognition of a labor organization as the "bargaining agent" for any group of public employees. The term "bargaining agent" is clearly a term of art. Webster's New Intercollegiate Dictionary, p. 89 (1981) defines a "bargain" as "an agreement between parties settling what each gives or receives in a transaction between them or what course of action or policy each pursues in respect to the other." "Bargaining," therefore, necessarily contemplates negotiations conducted with the intent of reaching a "bargain." Discussions which do not have this objective do not constitute "bargaining" within the meaning of section 2.

One kind of discussion which, in our opinion, would not necessarily constitute "bargaining" is a "consultation." Webster's New Intercollegiate Dictionary, p. 241 (1981) defines "consult" as, <u>inter alia</u>, "to ask the advice or opinion of" or "to deliberate together." "Consultation" or "meeting and conferring" about employment conditions is, we believe, perfectly permissible under article 5154c. As long as the political subdivision merely "discusses" such conditions, it is in no way obligated to implement anything discussed during the consultations, and it retains the right unilaterally to prescribe employment conditions in the district. <u>See</u> e.g., <u>Beverly v. City of Dallas</u>, <u>supra</u>; Attorney General Opinion MW-130 (1980).

In our opinion, it is clear that under these two sections, although political subdivisions may not recognize a labor organization as the "bargaining" agent for any group of public employees, they may certainly allow such an organization to act as spokesman for employees in "consultations." Indeed, the Texas Supreme Court has held that public employees have an "absolute right" to be represented in

grievance presentations by a union which does not claim the right to strike.  See Corpus Christi American Federation of Teachers v. Corpus Christi Independent School District, 572 S.W.2d 663 (Tex. 1978).  The grievance in the Corpus Christi case concerned membership on what was essentially a consultation committee.

The final issue to be addressed is whether the filing of a "grievance" is a prerequisite to the initiation of "consultations" between a political subdivision and a labor organization.  We conclude that nothing in article 5154c supports this proposition.

In Dallas Independent School District v. American Federation of State, County and Municipal Employees, Local Union No. 1442, 330 S.W.2d 702, 706 (Tex. Civ. App. – Dallas 1959, writ ref'd n.r.e.), the appellants complained that the trial court had issued a ruling that was a declaration that the School Board was thereby "required to treat with the [plaintiff] labor organizations on all employees as a class," and that article 5154c only contemplated "individual grievances."

In overruling this point, the court of civil appeals made some pertinent observations:

> The judgment in this respect is identical with the language of the Statute, limiting the authority of plaintiff-unions to the presentation of grievances . . . .  And though, at times a plaintiff local may be desirous of acting as spokesman for fellow public employees as a group rather than individually, still its role or right to be heard by the School Board in no event extends beyond the presentation of grievances.

330 S.W.2d at 707.

The clear import of the court's discussion and its action in overruling the appellants' point is that article 5154c does not contemplate only individual grievances.  Thus, we do not believe the Texas courts would share your view that the Texas statutes require the district to deal with employee grievances only on "matters of individual concern."  At the same time, we believe it is equally clear that a local organization such as the one at issue here has a "right" to be heard by a political subdivision only in instances in which "grievances" have been raised.  Thus, if the question before us were whether a political subdivision is obligated to meet with a local organization when no grievance is filed, we would answer in the negative.  As we understand it, however, the question is really whether a political subdivision is permitted to meet with a local organization when no formal grievance has been filed, for the purpose of "consulting" about working conditions.  We find nothing in article

5154c, applicable case law, or prior Attorney General Opinions that supports anything other than an affirmative answer to this question.

To summarize: (1) article 5154c prohibits "collective bargaining" as well as the recognition of any labor organization as the "bargaining agent" for any group of public employees; (2) "consultations" between a labor organization, acting as spokesman for employees, and officials of a political subdivision regarding employment conditions are permissible, and such political subdivision does not violate the prohibition against recognizing a labor organization as the "bargaining agent" for public employees if it merely confers with such organization regarding employment conditions; (3) public employees have the right to present grievances concerning employment conditions, and may present such grievances through a legal representative, but the filing of a grievance is not a prerequisite to the initiation of "consultations" between a labor organization and a political subdivision. Of course, in applying these conclusions in any particular fact situation, two other factors must be kept in mind: (1) local policies will have a bearing on how these matters are to be handled; and (2) "representatives" of employees who file grievances under section 6 may not claim the right to strike.

We therefore conclude that article 5154c, V.T.C.S., does not prohibit a community college district from establishing a "labor management committee" which will discuss general proposals concerning employment conditions. The filing of a grievance is not a prerequisite for such general discussions. The board of trustees must retain the right unilaterally to establish employment conditions in the district.

### S U M M A R Y

Article 5154c, V.T.C.S., does not prohibit the Alamo Community College District from establishing a "labor management committee" which will discuss general proposals concerning employment conditions. A formal grievance is not a prerequisite for such discussions. The board of trustees must retain the right unilaterally to dictate employment conditions in the district.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton